UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENEE KING,

Petitioner,

v.

ANTHONY STEWART,

Respondent.

_____/

Case No. 15-cv-13876

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MONA K. MAJZOUB

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Renee Marie King ("Petitioner"), filed for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her application, filed *pro se*, Petitioner challenges her conviction for first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), first degree criminal sexual conduct (CSC), Mich. Comp. Laws § 750.520b(1)(a), and first-degree child abuse, Mich. Comp. Laws § 750.136b(2). The trial court sentenced Petitioner to mandatory life imprisonment for the murder conviction and to concurrent prison terms of 30 to 50 years for the first-degree CSC conviction and 86 to 180 months for the first-degree child abuse conviction. For the reasons stated below, the petition for a writ of habeas corpus is **DENIED.**

1

# I. BACKGROUND

Petitioner was convicted following a jury trial in the Macomb County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The jury found that defendant killed her two-year-old stepdaughter, LFW. Defendant was home alone with LFW. A few hours later, after a 911 call, emergency personnel arrived at defendant's house and discovered that the child was dead. Medical evidence indicated that the child had multiple contusions about her body, including at least 20 different areas of bruising to the head. She also had a serious injury to her vagina and perineum. The medical examiner determined that the child died from cardiorespiratory arrest as a result of the head injuries and classified the death as a homicide. Defendant claimed that the child's injuries were inflicted accidentally when defendant was holding her and dropped her, or when defendant fell while holding her, or both.

*People v. King*, No. 309974, 2014 WL 1320155, *1 (Mich. Ct. App. Apr. 1, 2014).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 497 Mich. 903, 856 N.W.2d 45 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.  The trial court violated appellant's due process rights by allowing the prosecutor to introduce unfairly prejudicial evidence of an alleged incident involving the decedent, not tending to show motive, intent, or absence of accident.

2

II.   The police violated appellant's due process rights by failing to scrupulously honor appellant's demand for a lawyer and to stop the custodial interrogation at the hospital; alternatively, defense trial counsel was constitutionally ineffective in failing to call one of appellant's treating doctors to establish that appellant was in custody and not free to leave the hospital at the time of questioning.

III.   The trial court was required to score and consider the sentencing guidelines for first-degree criminal sexual conduct and first-degree child abuse, which were the highest crime class felony convictions because there is no crime class for first-degree felony murder.

Dkt. No. 1, pp. 14–19 (Pg. ID 14–19).

## II.   STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

3

presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility"

4

that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III. DISCUSSION

### A. Claim # 1: The other acts evidence claim.

Petitioner alleges that her due process rights were violated when the trial court allowed the prosecutor to introduce prejudicial evidence of an alleged incident involving the victim that did not tend to show motive, intent, or the absence of accident. Dkt. No. 1, pp. 14–15 (Pg. ID 14–15).

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000); *see also Regan v. Hoffner,* 209 F. Supp. 2d 703, 714 (E.D. Mich. 2002).

Petitioner's claim that the state court violated Michigan Rule of Evidence 404(b) or any other provision of state law by admitting evidence of her prior acts of child abuse against the victim is non-cognizable on habeas review. *See Bey v.*

*Bagley,* 500 F.3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 ("Nor do our habeas powers allow us to reverse [Petitioner's] conviction based on a belief that the trial judge incorrectly interpreted the [State] Evidence Code in ruling that the prior injury evidence was admissible as bad acts evidence in this case.").

The admission of this "prior bad acts" or "other acts" evidence against Petitioner at her state trial does not entitle her to habeas relief, because there is no clearly established Supreme Court precedent holding that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003); *see also Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003).

Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by the admission of evidence to establish the petitioner's propensity to commit criminal acts, the Michigan Court of Appeals' rejection of Petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

To the extent that Petitioner contends that evidence of the prior assault should have been excluded under Michigan Rule of Evidence 403 for being more prejudicial than probative, she would not be entitled to habeas relief. Appraisals of

6

the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 644–45 (E.D. Mich. 2002) ("[A] federal habeas court will not disturb a state court's admission of evidence of prior crimes, wrongs, or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that admitting the evidence denies the petitioner the due process of law."). So long as a state court's determination that evidence is more probative than prejudicial is reasonable, a federal court on habeas review will not overturn a state court conviction. *See Clark v. O'Dea,* 257 F.3d 498, 503 (6th Cir. 2001).

The Michigan Court of Appeals found that the prior act of striking the victim in the head was probative as to whether the trauma to the victim's head was inflicted deliberately or whether the victim's injuries were caused accidently, as follows:

> LFW died from blunt force trauma to the head. A principal issue at trial was whether that trauma was inflicted deliberately or whether the victim's injuries were accidentally caused. Defendant gave conflicting accounts of the falls and said both that she accidentally dropped the child and that she had accidentally fallen while holding the child. The prosecutor was allowed to introduce evidence that defendant had previously struck the child in the face deliberately. Evidence that defendant previously injured the child by deliberately

7

striking her in the head made it somewhat less likely that she accidentally injured the child in the head by dropping her. Therefore, the evidence was relevant for a proper purpose other than propensity. Given the horrific nature of the injuries the child sustained while in defendant's custody, it is highly unlikely that the jury would have been distracted by, or given undue weight to, evidence that defendant once bloodied the child's nose by slapping her. Therefore, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Consequently, the trial court did not abuse its discretion in admitting the evidence.

*King*, No. 309974, 2014 WL 1320155, *2 (Mich. Ct. App. Apr. 1, 2014).

The state court reasonably determined that the prior child abuse evidence was more probative than prejudicial. Petitioner is not entitled to habeas relief on her first claim. *Clark,* 257 F. 3d at 503.

## B. Claim # 2: The admission of oral statements to investigators.

In her second claim, Petitioner alleges that her oral statements made to investigators were improperly admitted in violation of *Miranda v. Arizona*,[1] because she was "in custody" and reasonably felt that she was unable to leave the hospital where the interviews took place. Dkt. No. 1, pp. 16–18 (Pg. ID 16–18). Petitioner further claims that her statement should have been suppressed because she had invoked her right to counsel. *Id*.

In rejecting Petitioner's claim, the Michigan Court of Appeals found that

---

[1]*Miranda v. Arizona,* 384 U.S. 436, 444 (1966).

Petitioner was not in custody when she spoke with Officer Derrick Reed and Detective Sergeant Renee Yax; therefore, Petitioner's *Miranda* rights had not been triggered:

> Defendant was interviewed at the hospital by Officer Reed and then by Officer Yax. Reed did not advise defendant of her rights before questioning her. Nevertheless, defendant claims that she asked for counsel while speaking with Officer Reed. Defendant must be in custody in order to invoke her right to counsel, and defendant claims that she was in custody at the time that she spoke to Officer Reed. A defendant who is questioned at a hospital generally is not in custody if she is not under arrest and is not otherwise restrained or prevented from leaving by the police.
>
> At the suppression hearing, the evidence showed that defendant was at the hospital emergency room, and not interviewed at the police station. This finding is supported by the testimony of Officer Reed and defendant, who both stated that they spoke while defendant was in the hospital. The trial court found that defendant was at the hospital for medical treatment. This finding is supported by defendant's mother's testimony that she had to leave defendant's bedside because defendant "was going through tests and different things." The trial court found that defendant "was free to leave and in fact did leave the hospital," and this finding is supported by Officer Reed's testimony that he did not place defendant under arrest and that she was free to leave and by defendant's testimony that she left after Officer Reed told her she was not under arrest. While defendant initially testified that Officer Reed threatened to harm her if she tried to leave, the trial court rejected that testimony, finding that defendant's credibility on that point was "suspect," in part because that testimony was contradicted by defendant's later testimony that she left after Officer Reed told her she was not under arrest. The trial court found that "[a]ny security that was present was due primarily to the family altercations in the hospital, not to restrain the defendant and there was no evidence that the police were in any way acting as security." This finding is supported by Officer Reed's

testimony that he did not know why hospital security personnel were involved and by defendant's mother's testimony that hospital security personnel had locked the doors to the emergency treatment area, apparently as part of the response to a family altercation in which some people had threatened to kill defendant. No one testified that hospital security personnel were acting at the behest of police. Given these findings, the trial court did not clearly err in finding that defendant was not in custody when Officer Reed interviewed her at the hospital.

*King*, 2014 WL 1320155, * 3–4 (Mich. Ct. App. Apr. 1, 2014) (internal citations omitted).

A prosecutor may not use a defendant's statements that stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards that are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

1. the person must be warned that he has a right to remain silent;
2. that any statement he does make may be used against him;
3. and that he has a right to the presence of an attorney, either appointed or retained.

*Miranda,* 384 U.S. at 444.

Police officers, however, are not required to administer *Miranda* warnings to every person whom they question nor are they required to administer *Miranda*

10

warnings simply because the questioning takes place in a police station or because the questioned person is one whom the police suspect. *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). Instead, *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render him 'in custody.' " *Mathiason*, 429 U.S. at 495. "Custody," for purposes of *Miranda,* requires a "significant deprivation of freedom." *See Mason v. Mitchell,* 320 F.3d 604, 632 (6th Cir. 2003).

Two discrete inquiries are essential to determining whether a criminal suspect was in custody at time of the interrogation, and therefore entitled to *Miranda* warnings. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). First, the Court must examine circumstances surrounding the interrogation. *Id.* Second, given those circumstances, the Court must ask whether a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave. *Id.* The initial determination of whether a suspect is in custody, for purposes of *Miranda*, depends on the objective circumstances of the interrogation, not on the subjective views harbored by the interrogating officer. *See Stansbury v. California,* 511 U.S. 318, 323 (1994). A policeman's unarticulated plan has no bearing upon whether a suspect is "in custody," so as to require *Miranda* warnings. Instead, the relevant inquiry is "how a reasonable man in the suspect's

11

position would have understood his situation." *See Berkemer v. McCarty,* 468 U.S. 420, 442 (1984).

The Michigan Court of Appeals' determination that Petitioner was not in custody so as to trigger the need for *Miranda* warnings was a reasonable determination of the facts and law in this case. *See Peerenboom v. Yukins*, 75 F. Supp. 2d 691, 694–95 (E.D. Mich. 1999) (finding habeas claim was barred, under AEDPA, when state court of appeals did not unreasonably apply Supreme Court precedent in holding that a petitioner was not in custody when interviewed by police while in hospital recovering from injuries sustained when bomb built to kill intended victim accidentally exploded, and that her statements were not required to be excluded for failure to give *Miranda* warnings).

Petitioner was at the hospital for medical treatment when questioned by Officer Derrick Reed and Detective Sergeant Renee Yax. Reed informed Petitioner that she "was free to leave and [she] in fact did leave the hospital," following the questioning.[2] *Id.* at 4. There is no indication that the questioning

---

[2]Petitioner claims that a reasonable person would not have felt free to leave the hospital at the time of interrogation. Dkt. No. 1, p. 18 (Pg. ID 18). However, the record reflects that Petitioner felt free enough to terminate the interview when Reed told her she was not under arrest. The record reflects that petitioner freely left the interview, but remained for a period of time at the hospital as a matter of hospital protocol.

took place in a context where Petitioner's freedom to depart was so restricted that she did not feel free to terminate the conversation and leave. Because Petitioner was not in custody when she was at the hospital, there was no duty for the police to advise Petitioner of her *Miranda* warnings, thus, the state court did not err in refusing to exclude her statement on this basis. The admission of Petitioner's subsequent incriminating statements did not violate her Fifth Amendment rights.

Petitioner further claims that her statement should have been suppressed because she invoked her right to counsel.

When an accused invokes his or her right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). The rule in *Edwards* is considered "a corollary to *Miranda's* admonition that '[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present.' " *Arizona v. Roberson*, 486 U.S. 675, 680 (1988) (quoting *Miranda,* 384 U.S. at 474). The rationale behind *Edwards* is that once the accused informs law enforcement officials "he is not capable of undergoing [custodial] questioning without advice of counsel," "any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and

not the purely voluntary choice of the suspect." *Maryland v. Shatzer*, 130 S. Ct. 1213, 1219 (2010) (quoting *Roberson*, 486 U.S. at 681).

A number of courts have held that the rule established in *Edwards* is applicable only if a person is subjected to an interrogation while in police custody. *See Burket v. Angelone*, 208 F.3d 172, 197 (4th Cir. 2000) (petitioner "could not invoke the protections provided by *Miranda*," including the right to counsel, "because he was not 'in custody' at the time he stated 'I think I need a lawyer' "); *United States v. Wyatt*, 179 F.3d 532, 538 (7th Cir. 1999) ("The Fifth Amendment right to counsel safeguarded by *Miranda* cannot be invoked when a suspect is not in custody, even if in anticipation of future custodial interrogation."); *United States v. Bautista*, 145 F.3d 1140, 1147 (10th Cir. 1998) ("[I]n order to implicate the *Miranda-Edwards* right to counsel prophylaxis, both a custodial situation and official interrogation are required."); *Alston v. Redman,* 34 F.3d 1237, 1244 (3th Cir. 1994) ("*Miranda* is not implicated" absent "both a custodial setting and official interrogation"); *Tukes v. Dugger*, 911 F.2d 508, 515 (11th Cir. 1990) ("Where the prisoner is not in custody, the *Edward*s and *Roberson* concerns are not triggered because the non-custodial defendant is free to refuse to answer police questions, free to leave the police station and go home, and free to seek out and consult a lawyer"); *U.S. v. Assi,* 512 F. Supp. 2d 1047, 1055 (E.D. Mich.

14

2007) (Rosen, J.) (finding where suspect was admittedly not under arrest during questioning by federal agents, and agents had informed suspect that he was free to conclude questioning at any time, interview was non-custodial, and suspect had no right to counsel during it); *United States v. Ridley,* 199 F. Supp. 2d 704, 713 (S.D. Ohio 2001) (defendant's alleged question to FBI agent before being questioned at the FBI offices, in which he asked agent whether he needed a lawyer, was insufficient to invoke defendant's right to counsel under *Miranda*; defendant was not in custody); *Trapani v. Stovall,* No. 2006 WL 123784, *9 (E.D. Mich. January 17, 2006) (Tarnow, J.) ("Because petitioner was not subjected to custodial interrogation in this case, the dictates of *Edwards* do not apply"); *see also United States v. Martin,* 95 F.App'x. 169, 178, n.8 (6th Cir. 2004) ("Martin's claim may also fail for the additional independent reason that since Martin was not in custody for purposes of *Miranda* when he made his initial phone call to his attorney, *Edwards* does not apply.").

The holdings in these cases appear to be consistent with Supreme Court jurisprudence. In *Montejo v. Louisiana*, 556 U.S. 778 (2009), the Supreme Court overruled their previous decision in *Michigan v. Jackson*, 475 U.S. 625 (1986), which had forbid the police from initiating an interrogation of a criminal defendant once he has invoked his Sixth Amendment right to counsel at an

15

arraignment or similar proceeding. In *Montejo,* the Supreme Court noted that:

> The *Miranda-Edwards* regime is narrower than *Jackson* in one respect: The former applies only in the context of custodial interrogation. If the defendant is not in custody then those decisions do not apply; nor do they govern other, noninterrogative types of interactions between the defendant and the State (like pretrial lineups). However, those uncovered situations are the least likely to pose a risk of coerced waivers. When a defendant is not in custody, he is in control, and need only shut his door or walk away to avoid police badgering.

*Id*. at 795.

The Supreme Court further observed that they had "never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation' . . . ." *Montejo,* 556 U.S. at 797 (quoting *McNeil*, 501 U.S. at 182, n.3). Language in other Supreme Court cases also suggests that the rule in *Edwards* applies only in the context of custodial interrogation. *See McNeil,* 501 U.S. at 178 (The purpose of the *Miranda-Edwards* guarantee is narrower than the one protected by the Sixth Amendment right to counsel because it relates only to custodial interrogation); *Minnick v. Mississippi,* 498 U.S. 146, 154 (1990) ("*Edwards*' purpose [is] to protect the suspect's right to have counsel present at custodial interrogation").

In light of the rationale behind *Edwards,* the fact that the Supreme Court has suggested that *Edwards* does not apply to non-custodial interrogations, and the

16

fact that numerous courts, including the Sixth Circuit and two judges within this district, have concluded that *Edwards* applies only if a person is subjected to a custodial interrogation, Petitioner is unable to show that the Michigan Court of Appeals' rejection of her *Edwards* claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. at 103. The extension of *Miranda* and *Edwards* "outside of the context of custodial interrogation, would diminish the 'bright-line' nature of the Supreme Court's *Miranda* jurisprudence, often cited by the Court as one of the qualities of that body of law." *Alston,* 34 F.3d at 1249, n.11.

As part of her second claim, Petitioner alleges that trial counsel was ineffective for failing to call Dr. Julie Lata to testify at the *Walker*[3] hearing in support of her claim that she was in custody at the time of the police interviews. Petitioner contends that Dr. Lata would have testified that she dictated a medical report on Petitioner the day of LFW's injuries demonstrating that Petitioner was in custody on the day of the police interviews.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First,

---

[3]*People v. Walker,* 374 Mich. 331, 132 N.W.2d 87 (1965).

17

the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. First, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, Petitioner must show that such performance prejudiced his or her defense. *Id*. To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the petitioner who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).

Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011).

19

Petitioner contends that trial counsel was ineffective by not calling Dr. Julie Lata to testify in connection with a medical report that she dictated around the time of the police interviews. Dkt. No. 1, p. 17 (Pg. ID 17). The Michigan Court of Appeals rejected Petitioner's claim finding that such testimony would have been more damaging than helpful to Petitioner's case as follows:

> Defendant's claim is premised on an excerpt from a report prepared by Dr. Lata during defendant's hospitalization. Dr. Lata's report states in part:
>
>> While the patient was in the emergency department, she had multiple question and answer periods which occurred with the medical examiner as well as the police department regarding her stepdaughter. The patient was becoming somewhat agitated as she was awaiting being medically cleared and receiving these interviews; however, per the police department, the patient could not get [sic] leave the emergency department until she was medically clear, and they needed to be notified prior to her official discharge. While the patient was waiting, she did become agitated, and she attempted to leave and remove her IV. The police were in the emergency department and told her that she needed to be detained.
>
> Dr. Lata's report does indicate that the police told defendant that she was being detained. However, it is not clear that was all the police said—they might have explained that she was being detained because she had not been medically cleared. Accordingly, the report does not establish that defendant was being held by the police rather than by hospital authorities. Further, Dr. Lata's report indicates that the police told defendant that she was being detained when defendant was removing her IVs. Evidence at the suppression hearing indicated that this incident occurred after defendant had

20

spoken to both officers and just before defendant was released from the hospital—not when defendant was talking to Officer Reed and before she spoke to Officer Yax. Moreover, despite Dr. Lata's indication that the police told defendant that she was being detained, the trial court found that defendant "told Police Officer Reed she was going to leave because she was not under arrest" and defendant did in fact leave. This finding is supported by defendant's own testimony and thus is not clearly erroneous. Therefore, it is not reasonably probable that had Dr. Lata testified at the suppression hearing, the trial court would have found that defendant was in custody. Accordingly, we reject defendant's ineffective assistance of counsel claim.

*King*, 2014 WL 1320155, *5 (Mich. Ct. App. Apr. 1, 2014)

Petitioner has not submitted an affidavit from Dr. Julie Lata, to indicate what this witness's testimony would be, nor did Petitioner submit any affidavit from Dr. Lata to the state courts. Dr. Lata's medical report is hearsay and does not establish that Dr. Lata would have actually testified to any facts to establish Petitioner was in custody and not free to leave the police interviews. This contention also contradicts Petitioner's statement that "she was going to leave because she was not under arrest" and the fact that Petitioner did in fact leave. *Id.*

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of her ineffective assistance claim, Petitioner is not entitled to an evidentiary hearing on her ineffective assistance of counsel claim with this Court.

21

*See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner has not offered, either to the Michigan courts or to this Court, any evidence beyond her own assertions as to whether Dr. Lata would have been able to testify and what the content of this witness's testimony would have been. In the absence of such proof, Petitioner is unable to establish that she was prejudiced by counsel's failure to call Dr. Lata to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007).

Petitioner admitted at the *Walker*[4] hearing that the officers told her that she was not under arrest, and she ultimately left. (Tr. 2/22/2012, pp. 19, 24). Dr. Lata's report states that Petitioner was somewhat agitated while she awaited medical clearance to leave the emergency room. *King*, No. 309974, 2014 WL 1320155, *5. If called to testify, Dr. Lata's testimony may have supported the prosecution's contention that Petitioner had been "detained" because she had not been given a medical clearance by the medical staff. Petitioner has failed to show that trial counsel's failure to subpoena Dr. Lata was anything other than sound trial strategy. Petitioner is not entitled to relief on her second claim.

---

[4] *People v. Walker,* 374 Mich. 331, 132 N.W.2d 87 (1965).

22

**C. Claim # 3: The sentencing guideline claim.**

Petitioner alleges that she should be resentenced because the trial court failed to score sentencing guidelines for her CSC I and child-abuse convictions. Dkt. No. 1, p. 18 (Pg. ID 18).

State courts are the final arbiters of state law. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Sanford v. Yukins,* 288 F.3d 855, 860 (6th Cir. 2002). Therefore, claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Vliet v. Renico,* 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002). A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Petitioner's claim that the state trial court incorrectly scored or calculated her sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is a state law claim. *See Tironi v. Birkett*, 252 F. App'x. 724, 725 (6th Cir. 2007) (unpublished)*; Howard v. White,* 76 F. App'x. 52, 53 (6th Cir. 2003) (unpublished); *McPhail v. Renico,* 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Errors in the application of state sentencing guidelines cannot

23

independently support habeas relief. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016). Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating Petitioner's guideline score would not merit habeas relief. *Id.* Petitioner's claim that the state trial court improperly departed above the correct sentencing guidelines range would thus not entitle her to habeas relief, because such a departure does not violate any of the Petitioner's federal due process rights. *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000). Petitioner is not entitled to habeas relief on her sentencing claim.

## IV.   CONCLUSION

The Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree

24

that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

The Court will also deny Petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V.   ORDER

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that leave to appeal *in forma pauperis* is **DENIED**.

/s/Gershwin A Drain
**HON. GERSHWIN A. DRAIN**

**Dated:   March 20, 2017**          UNITED STATES DISTRICT JUDGE